UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| ANDREA DORSETT,<br>Social Security No. XXX-XX-5426,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 4:13-cv-90-RLY-WGH |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This action is before me, William G. Hussmann, Jr., United States Magistrate Judge, pursuant to Chief Judge Young's order. (Filing No. 26.) Plaintiff Andrea Dorsett seeks judicial review of the Social Security Administration's final decision, which found that she was not disabled and therefore not entitled to Disability Insurance Benefits under the Social Security Act. 42 U.S.C. § 301 *et seq.* The matter is fully briefed. (Filing No. 20; Filing No. 25.) Being duly advised, I recommend **AFFIRMING** the Administrative Law Judge's decision.

**I.	Background**

In their briefs, the parties thoroughly recounted the facts underlying Dorsett's application for benefits and the proceedings that have brought this action before the Court. (*See* Filing No. 20; Filing No. 25.) I revisit them here only as necessary to address the parties' arguments on judicial review.

**A. Procedural History and Jurisdiction**

Dorsett applied for benefits on May 10, 2010, alleging an onset date of October 16, 2009. (Filing No. 13-5 at ECF p. 2.) The Administration denied Dorsett's application on October 6, 2010 (Filing No. 13-4 at ECF pp. 2–4), and again upon reconsideration on March 4, 2011 (*id.* at ECF pp. 8–11). An Administrative Law Judge ("ALJ") heard Dorsett's application on February 15, 2012. (Filing No. 13-2 at ECF pp. 29–78.) On March 29, 2012, the ALJ issued an opinion finding that Dorsett was not disabled and that she therefore was ineligible for benefits. (*Id.* at ECF pp. 9–28.) On May 22, 2013, the Appeals Council denied Dorsett's request for review. (*Id.* at ECF pp. 2–7.) This Court has jurisdiction to review the ALJ's decision as the Administration's final decision on Dorsett's application. 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.955(a), 404.981.

**B. Dorsett's Conditions and Work History**

Dorsett is a 56-year-old woman whose records depict struggles with breathing and lower back pain. She has completed a high school education. (Filing No. 13-6 at ECF p. 6.) From October of 1995 until September of 1997, Dorsett operated a sewing machine in a rug shop. (Filing No. 13-2 at ECF pp.

40–41; Filing No. 13-6 at ECF p. 6.) She spent the next 13 years working full time as an aide for people experiencing mental disabilities. (Filing No. 13-2 at ECF pp. 36–39; Filing No. 13-6 at ECF p. 6.) Dorsett claims she had to leave her job because she could not breathe well enough to get up and down the steps at work. (Filing No. 13-2 at ECF p. 41.)

### C. Dorsett's Burden of Proof and the ALJ's Five-Step Inquiry

In order to qualify for benefits, Dorsett must establish that she suffered from a disability as defined by the Social Security Act. A disability is an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish a disability, a claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908.

An ALJ must perform a sequential, five-step inquiry to determine whether a claimant is disabled:

(1) Was the claimant unemployed at the time of the hearing?
(2) Does the claimant suffer from a severe impairment or combination of impairments?

3

(3) Are any of the claimant's impairments—individually or combined—so severe that the Social Security regulations have listed them as necessarily precluding the claimant from engaging in substantial gainful activity?

(4) Does the claimant lack residual functional capacity ("RFC") to perform his past relevant work?

(5) Does the claimant lack RFC to perform any other work existing in significant numbers in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4).

The claimant is disabled only if the ALJ answers "yes" to all five questions. *See Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). An answer of "no" to any question ends the inquiry immediately and precludes the claimant from eligibility for benefits. *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* If the claimant succeeds, the Commissioner bears the burden at Step Five of proving that the claimant is not disabled. *Id.*

### D. The ALJ's Findings

At Step One, the ALJ found that Dorsett had not engaged in substantial gainful activity since her alleged onset date. (Filing No. 13-2 at ECF p. 14.) At Step Two, the ALJ found that Dorsett was severely impaired by:

- chronic obstructive pulmonary disease (COPD);
- obstructive sleep apnea;
- lumbar osteoporosis and possible degenerative disc disease or degenerative joint disease;
- trochanteric bursitis; and
- an affective disorder.

4

(*Id.* at ECF pp. 14–15.)  The ALJ found that Dorsett also was impaired—although not severely—by a series of ailments not at issue here.  (*Id.* at ECF p. 15.)

At Step Three, the ALJ found that none of Dorsett's impairments—individually or combined—met or medically equaled the severity of a listed impairment.  (*Id.*)  The ALJ explained that he gave specific attention to Listings 1.02 (major dysfunction of a joint due to any cause), 1.04 (disorders of the spine), 3.02 (chronic pulmonary insufficiency), and 12.04 (affective disorders).  (*Id.* (applying 20 C.F.R. § 404, Subp't P, App'x 1).)

Before proceeding to Step Four, the ALJ found that Dorsett retained RFC necessary to perform light work as defined by 20 C.F.R. § 404.1567(b), except that she:

- could lift, carry, and pull up to 20 pounds occasionally and 10 pounds frequently;

- could walk for up to six hours in an eight-hour workday;

- should not walk for more than 15 minutes at a time;

- could stand for two hours at a time, but then must be allowed to sit for five minutes;

- could sit for up to six hours in an eight-hour workday;

- could perform no more than occasional stooping, kneeling, crouching, and climbing of ramps or stairs;

- should never crawl, climb ladders, ropes, or scaffolds, or work around unprotected heights or hazardous machinery;

- could not work with concentrated exposure to extreme cold or heat, high humidity, wetness, fumes, noxious odors, dusts, or gases;

- could perform only simple, routine, repetitive tasks;

- could remember and carry out only short, simple instructions;

- could sustain concentration and attention for two hours at a time, but must then be allowed to rest for five minutes; and

- could tolerate no more than ordinary and routine changes in her wok setting or duties.

(*Id.* at ECF p. 17.)

Based on the hearing testimony of a vocational expert ("VE"), the ALJ found at Step Four that Dorsett's RFC would not allow her to perform any past relevant work. (*Id.* at ECF p. 22.) At Step Five, the ALJ accepted the VE's testimony that Dorsett's RFC would allow her to perform such light, unskilled jobs as quality control, clerical support, and stock clerk and found that those jobs existed in significant numbers in the regional and national economies. (*Id.* at ECF p. 23.)

## II.   Standard of Review

The Court must affirm the ALJ's decision unless it is unsupported by substantial evidence or based on a legal error. *E.g.*, *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). The ALJ—not the Court—has discretion to weigh the evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales,* 402 U.S. 389, 399–400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).

Even where the ALJ has based his decision on a legal error, the Court may not remand the action if the error was harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The harmless error standard does not allow the ALJ's decision to stand just because it is otherwise supported by substantial evidence. *E.g.*, *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Substantial-evidence review ensures that the Administration has fulfilled its statutory duty to "articulate reasoned grounds of decision." *Spiva*, 628 F.3d at 353. In contrast, review for legal errors "ensure[s] that the first-line tribunal is not making serious mistakes or omissions." *Walters v. Astrue*, 444 Fed. App'x 913, 919 (7th Cir. 2011) (non-precedential order) (citing *Spiva*, 628 F.3d at 353). Therefore, an error is harmless only if the Court determines "with great confidence" that remand would be pointless because no reasonable trier of fact could reach a conclusion different from the ALJ's. *McKinzey*, 641 F.3d at 892; *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### III. Analysis

Dorsett raises four challenges to the ALJ's decision:

(A) The ALJ's RFC determination finds no support from substantial evidence.

(B) The ALJ erred in weighing the medical opinions in the Record.

(C) The ALJ erred by including criticized boilerplate language in his RFC assessment.

(D) The ALJ erred by incompletely evaluating Dorsett's daily activities.

I will address each challenge in turn.

## A. Substantial evidence supports the ALJ's RFC determination.

The ALJ's RFC determination mirrors the RFC determination Dr. M. Brill issued on October 4, 2010, as part of his Disability Determination Explanation. (*Compare* Filing No. 13-2 at ECF p. 17, *to* Filing No. 13-3 at ECF pp. 5–7.) According to Dorsett, Dr. Brill's RFC determination represents "the only record evidence that would support the ALJ's finding that Claimant could do 'light work.'" (Filing No. 20 at ECF p. 11.) Thus, Dorsett offers a series of findings from doctors who examined and treated her as evidence that the ALJ's RFC determination lacks the support of substantial evidence. (*Id.* at ECF pp. 12–14.)

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation omitted); *see also* Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997). An ALJ's conclusion may be supported by substantial evidence even though a different conclusion also is supported by substantial—or even more or better—evidence. *See* Arkansas v. Oklahoma, 503 U.S. 91, 112–13 (1992); *Farrell v. Sullivan*, 878 F. 2d 985, 990 (7th Cir. 1989). A reviewing court lacks authority to re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera*, 173 F.3d at 1055.

The evidence Dorsett cites fails to directly contradict either RFC determination. For example, Dr. John Schuck (Dorsett's family doctor) diagnosed her with COPD and lower back pain on November 1, 2009. (Filing No. 13-7 at ECF pp. 34–35.) Dr. Sandeep Bansal, a pulmonary specialist,

reiterated Dorsett's COPD diagnosis and ordered testing, the results of which also suggested a pulmonary disorder. (*Id.* at ECF pp. 3, 7–8, 16, 25.) Records from February and August of 2010 indicate Dorsett used an oxygen tank while sleeping. (*See id.* at ECF pp. 25, 49.) Finally, after performing a consultative physical examination on August 20, 2010, Dr. Theodora Saddoris affirmed Dorsett's COPD and sleep apnea diagnoses and noted that Dorsett limped, used a cane, occasionally fell because "[h]er right knee will suddenly give out on her," and was "limited in the duration she can walk" and sit. (*Id.* at ECF p. 51.)

Dr. Brill rendered his RFC determination on the basis of a record that included all the medical records Dorsett cites, and he explicitly addressed her COPD, her difficulties with walking, and limitations stemming from her back pain. (*See* Filing No. 13-3 at ECF pp. 3–4, 6.) The ALJ addressed in detail all the records, diagnoses, and symptoms Dorsett cites. (*See* Filing No. 13-2 at ECF pp. 18–20.) Finally, consistent with Dr. Saddoris's opinion, both Dr. Brill and the ALJ found Dorsett durationally limited in her abilities to walk, stand, and sit. (*Compare* Filing No. 13-2 at ECF p. 17, *and* Filing No. 13-3 at ECF p. 5, *to* Filing No. 13-7 at ECF p. 51.)

With the exception of Dr. Saddoris's opinions on Dorsett's abilities to walk and sit, Dorsett cites records reporting conditions and symptoms—not abilities or limitations. The ALJ and Dr. Brill bore responsibility for assessing Dorsett's abilities and limitations after considering her conditions and symptoms. The ALJ, Dr. Brill, and Dr. Saddoris all found Dorsett limited in

9

performing the same functions. And, because Dr. Saddoris did not explain the extent of her perception of Dorsett's limitations, I cannot find the RFC assessments inconsistent with her opinion. Moreover, because the ALJ explicitly and extensively considered the conditions and symptoms Dorsett cites as substantial evidence, I cannot find the RFC determination unsupported by substantial evidence without impermissibly reweighing the evidence. A different ALJ may reasonably have reached a different conclusion, but I find the ALJ's RFC determination supported by substantial evidence. I therefore recommend that the Court **AFFIRM** this component of the ALJ's decision.

### B. The ALJ did not err—or committed harmless error—in weighing the medical opinions.

The ALJ assigned "great weight" to Dr. Brill's RFC determination but did not explain how he weighed any other medical opinions. (Filing No. 13-2 at ECF p. 20.) Dorsett argues that the ALJ erred by assigning great weight to Dr. Brill's opinion because Dr. Brill never treated or examined her. (*See* Filing No. 20 at ECF pp. 10–14.) Citing the same evidence discussed in Section III(A) of this Report, Dorsett argues that the ALJ should have assigned greater weight to the opinions of the doctors who treated and examined her. (*See id.*)

An ALJ must evaluate every medical opinion he receives. 20 C.F.R. § 404.1527(d). "Medical opinions are statements . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ ordinarily should assign greater weight to an

examining source's opinion than he assigns to a non-examining source's opinion. 20 C.F.R. § 404.1527(d)(1). Moreover, an ALJ must grant a treating source's opinion "controlling weight" or explain why it deserved less weight considering:

- the length, nature, and extent of the treatment relationship;
- the extent to which the source supports her opinion with explanations;
- the opinion's consistency with the record as a whole;
- whether the source has rendered an opinion in her area of specialty; and
- other factors, such as the source's familiarity with disability proceedings and the other evidence in the record.

20 C.F.R. § 404.1527(d)(2)–(6).

If the ALJ erred by failing to assign greater weight to the treating and examining sources' opinions, that error was harmless. First, very little of the evidence Dorsett cites constitutes opinion evidence as defined by the Social Security regulations. A medical opinion is a statement reflecting the physician's judgment. 20 C.F.R. § 1527(a)(2). So, among the evidence Dorsett cites, only her various diagnoses and Dr. Saddoris's opinion that Dorsett's abilities to walk and sit constitute opinions. The ALJ was not required to assign weight to any of the other evidence Dorsett cites.

Second, I struggle to read the ALJ's opinion as assigning less weight to the treating and examining sources' opinions than to Dr. Brill's opinion. The ALJ was only required to explain how he weighed the diagnoses and Dr. Saddoris's opinion. The ALJ accepted the diagnoses (*see* Filing No. 13-2 at

11

ECF p. 14), and both the ALJ and Dr. Brill incorporated Dr. Saddoris's opinion into their RFC determinations by including limitations on walking, standing, and sitting (*see id.* at ECF p. 17; Filing No. 13-3 at ECF p. 5). And, the ALJ credited Dr. Brill's opinion in part because he found it consistent with the other credible evidence in the Record. (*See* Filing No. 13-2 at ECF p. 20.) Because he credited the diagnoses and Dr. Saddoris's opinion, I infer that the ALJ considered them credible and, therefore, consistent with Dr. Brill's opinion. So, I understand the ALJ to have assigned—albeit without explicit explanation—equal weight to Dr. Brill's opinion, the diagnoses, and Dr. Saddoris's opinion.

Third, even if the ALJ afforded greater weight to Dr. Brill's opinion, he satisfied his duty to explain that judgment. The ALJ thoroughly addressed the treating and examining sources' reports. (*Id.* at ECF pp. 18–20.) He declined to address the Section 404.1527(d) criteria one-by-one, but his analysis encompasses them. The ALJ discussed Dorsett's course of treatment with each source. (*Id.*) He recognized Dr. Bansal as a pulmonary specialist. (*Id.* at ECF p. 18.) And, the ALJ assigned great weight to Dr. Brill's RFC determination because of two Section 404.1527(d) criteria: He valued Dr. Brill's familiarity with disability proceedings and found his opinion consistent with the other credible evidence in the record. (*See id.* at ECF p. 20.) Therefore, I find that the ALJ carried his burden of explaining his decision to grant great weight to Dr. Brill's opinion.

Fourth, even if the ALJ assigned greater weight to Dr. Brill's opinion than he assigned to the diagnoses or Dr. Saddoris's opinion, and even if his explanation of that judgment constitutes error, I find the error harmless. The ALJ accepted the diagnoses and incorporated Dr. Saddoris's opinion into his RFC determination, so I conclude "with great confidence" that the ALJ would have found the same RFC even if he had assigned them controlling weight. *McKinzey*, 641 F.3d at 892. Because Dr. Saddoris failed to explain the extent of Dorsett's limitations in walking and sitting (Filing No. 13-7 at ECF p. 51), a different ALJ might reasonably have translated her opinion into a more limited RFC. Even so, that outcome would reflect a different interpretation of Dr. Saddoris's opinion (not an assignment of greater weight) and raise a question of substantial evidence (not legal error), which I addressed in Section III(A) of this Report.

In conclusion, if the ALJ erred in weighing the medical opinions, I find the error harmless. I therefore recommend that the Court **AFFIRM** this component of the ALJ's decision.

### C. The ALJ's assessment of Dorsett's credibility was not "patently wrong."

In determining Dorsett's RFC, the ALJ found that her "statements concerning the intensity, persistence and limiting effects of her symptoms" lacked credibility. (Filing No. 13-2 at ECF pp. 18, 21.) An ALJ is required to assess a claimant's credibility as a step toward determining her RFC. *See* SSR 96-7p. The ALJ's credibility assessment "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to

13

understand the reasoning." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). But, the ALJ is entitled to less deference to the extent the assessment "rests on 'objective factors or fundamental implausibilities,' rather than on a claimant's demeanor or other subjective factors." *Bates v. Colvin,* 736 F.3d 1093, 1098 (7th Cir. 2013) (quoting *Schomas v. Colvin,* 732 F.3d 702, 708 (7th Cir. 2013)). Even so, a reviewing court may overturn an ALJ's credibility determination only if it is "patently wrong." *Craft,* 539 F.3d at 678.

Dorsett raises two challenges to the ALJ's adverse credibility assessment. First, Dorsett alleges that the ALJ based his credibility assessment on an improper review of her daily activities. (Filing No. 20 at ECF pp. 14–15.) Second, Dorsett argues that the ALJ's use of suspect boilerplate language suggests he impermissibly determined Dorsett's RFC before assessing her credibility. (*Id.* at ECF p. 16.) Although I find the ALJ's credibility assessment flawed in both respects, I also find that neither error renders the credibility determination "patently wrong." *Craft,* 539 F.3d at 678. I therefore recommend that the Court **AFFIRM** this component of the ALJ's decision.

### 1. The ALJ's evaluation of Dorsett's daily activities does not render the credibility assessment "patently wrong."

Supporting his conclusion that Dorsett was "not fully credible as to the extent of her impairments," the ALJ explained that Dorsett's day-to-day activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Filing No. 13-2 at ECF p. 21.) The ALJ noted that Dorsett's self-described daily activities included caring for a

14

young child, performing chores around the house, and preparing breakfast, lunch, and dinner. (*Id.* (citing Filing No. 13-6 at ECF p. 26).) The ALJ further noted that Dorsett described herself as able to "perform light cleaning, clean laundry, drive, shop, garden, and take care of her grandchild." (*Id.* at ECF p. 21 (citing Filing No. 13-6 at ECF pp. 26–30).)

At least one of these findings directly clashes with Dorsett's hearing testimony and the self-report the ALJ cited. The ALJ described Dorsett as able to "garden" (*id.*), but she testified to being unable to work in her yard (*id.* at ECF p. 55). Instead, the record reflects that Dorsett enjoys reading about home decorating and gardening and that she makes floral arrangements but cannot sit long enough to do that well. (*See id.* at ECF pp. 53–54, 63; Filing No. 13-6 at ECF p. 30.)

Other of the ALJ's findings overlook limitations clearly indicated in Dorsett's testimony and her self-report. For example,

- The ALJ noted Dorsett's report that she prepares three meals per day but not her testimony that she can only stand long enough to "make a piece of toast," that her husband "does most of the cooking," and that she might contribute by "tell[ing] him what to do." (Filing No. 13-2 at ECF pp. 53–54.)
- The ALJ cited Dorsett's report that she cares for her young grandchild on a daily basis but not her testimony that her husband and daughter assist her. (*Id.* at ECF pp. 53, 63–64.)
- The ALJ described Dorsett as able to do laundry but failed to acknowledge her testimony that she can only sort and fold clothing and that her husband helps with the other aspects of that chore. (*Id.* at ECF p. 53.)
- The ALJ cited Dorsett's self-report that she could perform "light cleaning" but not her testimony that she cannot push a vacuum cleaner. (*Id.* at ECF p. 55.)

15

Dorsett argues that the ALJ erred by neglecting limitations manifest in her daily activities.  (*See* Filing No. 20 at ECF pp. 14–15.)  The Commissioner argues that the ALJ's RFC determination accurately reflects Dorsett's daily activities and that any error is harmless.  (Filing No. 25 at ECF p. 8.)

When evaluating a claimant's credibility, an ALJ must consider her allegations' consistency with her daily activities —including any limitations manifest in those activities.  An ALJ must test the veracity of a claimant's complaints by comparing them to the activities in which she engages every day.  S.S.R. 96-7p; *Craft*, 539 F.3d at 680.  But, an ALJ errs by ignoring limitations or difficulties the claimant experiences in performing those activities.  *E.g.*, *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2013).

For example, in *Roddy v. Astrue*, the Seventh Circuit found that the ALJ erred by finding that the claimant could perform household tasks even though the claimant testified she lacked stamina to clean even one room of her home in a single day, sweep and mop in the same day, or prepare a meal more demanding than a sandwich.  705 F.3d 631, 639 (7th Cir. 2013).  In *Craft*, the Court of Appeals found that the ALJ erred by finding the claimant lacked credibility because he took a "'daily walk'" but ignoring the fact that the claimant walked only to his mailbox and back and was exhausted afterward.  539 F.3d at 680.  And, in *Bjornson v. Astrue*, the Seventh Circuit held that an ALJ errs by ignoring the impact of assistance from family members when evaluating a claimant's daily activities.  671 F.3d 640, 647 (7th Cir. 2012).

16

I would not recommend the ALJ's credibility assessment as a model to be replicated. Dorsett's abilities to care for her grandchild, clean, and cook become far less impressive after considering her testimony that she received significant assistance and lacked stamina to push a vacuum cleaner or prepare any meal more complex than toast. And, although I perceive the ALJ to have simply misread a thick record, I find no evidentiary basis supporting his conclusion that Dorsett can garden.

Even so, three segments of the ALJ's opinion discourage me from finding his credibility assessment "patently wrong." *Craft,* 539 F.3d at 678. First, the ALJ broadly referenced the limitations Dorsett raised in her hearing testimony by noting that "although the claimant does have some problems[,] the evidence of record does not support her allegations to the extent she alleged at the hearing." (Filing No. 13-2 at ECF p. 21.) I would prefer that the ALJ address Dorsett's limitations one-by-one, but a credibility assessment need not be perfect to avoid remand. *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2007) ("Though the ALJ's credibility determination was not flawless, it was far from patently wrong").

Second, the ALJ explained that Dorsett's limitations "cannot be objectively verified with any reasonable degree of certainty." (Filing No. 13-2 at ECF p. 22.) Indeed, the only evidence Dorsett offers to corroborate her own testimony is a third-party function report completed by her husband. (*See* Filing No. 20 at ECF pp. 14–15.) And, the ALJ fairly discredited Mr. Dorsett's report because "he is not a disinterested party." (Filing No. 13-2 at ECF p. 22.)

17

Finally, the ALJ found it "difficult to attribute" the limitations Dorsett claimed to her medical conditions, "in view of the relatively weak medical evidence and other factors discussed in this decision." (*Id.*) In *Simila*, the Seventh Circuit expressly approved lack of support from objective evidence as a basis for an adverse credibility assessment. See 573 F.3d at 519. And, as I discussed in Section III(A) of this Report, the ALJ thoroughly and rationally evaluated the medical evidence, so I find he could reasonably conclude that evidence undermines Dorsett's claims regarding her limitations.

In sum, the ALJ's credibility assessment could be better, but I could not find it "patently wrong" without reweighing the evidence or substituting my judgment for the ALJ's. See *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). I therefore recommend that the Court **AFFIRM** this component of the ALJ's decision.

### 2. The ALJ overcame his use of criticized boilerplate language by thoroughly explaining his conclusion.

In his written opinion, the ALJ addressed Dorsett's RFC in three steps. First, he stated his conclusion—Dorsett's RFC—in bold type. (Filing No. 13-2 at ECF p. 17.) Next, he explained the process and considerations the Social Security regulations required him to undertake in determining Dorsett's RFC. (*Id.* at ECF pp. 17–18.) Finally, he discussed the evidence and explained his reasoning. (*Id.* at ECF pp. 18–22.) Early in his discussion of the evidence, the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the

18

> alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting effects of
> these symptoms are not credible to the extent they are
> inconsistent with the above residual functional capacity
> assessment.

(*Id.* at ECF p. 18.)

In *Bjornson*, the Seventh Circuit criticized this "opaque boilerplate" as "get[ting] things backwards." *See* 671 F.3d at 644–45. That is, although an ALJ must consider a claimant's credibility as a step toward determining her RFC, the boilerplate "implies that ability to work is determined first and is then used to determine the claimant's credibility." *Id.* at 645. But, an ALJ does not universally commit reversible error by including the boilerplate passage. As the Seventh Circuit clarified in *Filus v. Astrue*, "If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." 694 F.3d 863, 868 (7th Cir. 2012).

Like in *Filus*, the ALJ here supported his RFC determination with "reasons grounded in the evidence," so his use of the boilerplate language was not reversible error. *Id.* As I explained in Section III(A) of this Report, the ALJ premised his RFC determination on a thorough discussion of substantial evidence from the Record. And, as I explained in Section III(C)(1), the ALJ followed that discussion with a satisfactory explanation of his reasons for criticizing Dorsett's credibility. The ALJ's overall thoroughness assuages any concern that he made up his mind about Dorsett's RFC before massaging a credibility assessment into that mold. I therefore recommend that the Court **AFFIRM** this component of the ALJ's decision.

19

**IV. Conclusion**

For the foregoing reasons, I recommend that the Court **AFFIRM** the ALJ's decision.

Any objections to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 23rd day of May, 2014.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**